UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THIELE KAOLIN, INC. ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-00728 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| WISCONSIN CENTRAL LTD. ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Thiele Kaolin, Inc. filed a one-count complaint against Defendant Wisconsin Central LTD., alleging that it failed to provide compensation for its use of Plaintiff's private freight rail cars, in violation of provisions of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 10101–11908. For the reasons set forth, the Court denies Defendant's motion [11] to dismiss.

**Background**

Plaintiff Thiele Kaolin, Inc. ("Thiele Kaolin") is a mining company that mines and processes kaolin clay. Defendant Wisconsin Central Ltd. ("Wisconsin Central") is a railroad involved in the transportation of Plaintiff's products to Plaintiff's customers. Underlying the dispute is a complex federal regulatory regime involving the use of private freight rail cars. Railroads are "common carriers" and required to furnish "transportation or service on reasonable request." 49 U.S.C. § 11101(a). As the D.C. Circuit has explained:

> Railroads, pursuant to their common-carrier obligations under the
> Interstate Commerce Act, must provide railcars suitable for the
> transportation of a broad range of property, including agricultural
> products, flammable liquids, as well as crated freight. In part because
> of these diverse requirements, it has proved impracticable for rail
> common-carriers to invest the capital necessary for the acquisition of

1

> general-use and specialty rolling stock. Carriers, therefore, commonly lease railcars both from firms in the business of supplying railcars and, occasionally, from shippers themselves. Under these leasing arrangements, railroads fulfill their common-carrier obligation to make available suitable railcars by paying car providers their costs of owning the rolling stock through a variety of means, including direct "mileage allowances" and offsets on line-haul freight tariffs.

*General American Transp. Corp. v. ICC*, 872 F.2d 1048, 1050 (D.C. Cir. 1989). The Surface Transportation Board ("STB"), the successor agency to the Interstate Commerce Commission ("ICC"), is responsible for implementation of the ICCTA and issuance of regulations under the statute.

Plaintiff Thiele Kaolin required transportation of its kaolin clay from Georgia to customers in Wisconsin. Thiele Kaolin has acquired a number of tank and covered hopper rail cars that are suitable for transportation of clay to its customers.[1] Although the precise nature of the contractual relationship between Plaintiff and Defendant is not immediately clear from the face of the complaint, the following facts are accepted as true. At least two railroads, Defendant Wisconsin Central and Norfolk Southern Railway Company ("Norfolk Southern"), are involved in transporting Plaintiff's clay to Wisconsin.[2] Prior to April 2020, Defendant Wisconsin Central paid Plaintiff mileage allowances for use of Plaintiff's private freight cars. In April 2020, Defendant ceased paying Plaintiff mileage allowances. Norfolk Southern, meanwhile, continued to provide mileage allowances to Plaintiff for its portion of the route. At that point, Plaintiff began submitting mileage allowance claims to Defendant. Defendant denied each of these claims. Plaintiff asserts it has a right to collect these mileage allowances under the ICCTA.

---

[1] Tank cars and covered hoppers are different railcars used for transporting different varieties of commodity. Typically, tank cars are used to transport liquid or compressed commodities, while covered hoppers are used to transport dry bulk commodities. *See What Are All of the Different Rail Car Types?,* UNION PACIFIC (Jan. 18, 2022), https://www.up.com/customers/track-record/tr181121_rail_car_types.htm.

[2] Wisconsin Central and Norfolk Southern participate in "join-line" movements, whereby multiple railroads are involved in the transport of goods from one point to another, each responsible for movement across a portion of the route.

2

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Mere recitations of the elements of a cause of action in a conclusory fashion are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

Plaintiff asserts that it is entitled to payment, in the form of "mileage allowances," as reimbursement for Defendant's use of Plaintiff's privately owned freight tank and covered hopper freight rail cars. Defendant moves to dismiss Plaintiff's complaint on two sets of grounds. First, Defendant alleges that Plaintiff waived any right to collect mileage allowances for use of its freight cars. Second, Defendant argues that Plaintiff has no cause of action under the ICCTA to collect mileage allowances from use of its covered hopper cars. Defendant's motion fails on both grounds.

I. <u>Waiver</u>

Defendant argues that Plaintiff waived its right to collect car allowances. Specifically, Defendant alleges that Plaintiff's customers, acting as Plaintiff's agents, somehow waived any right Plaintiff may have had to collect mileage allowances from Defendant. As a threshold matter—as Plaintiff and Defendant appear to agree—Defendant's waiver argument is governed by federal common law. *Quasar Co., a Div. of Matsushita Elec. Corp. of Am. v. Atchison, Topeka & Santa Fe Ry. Co.*,

3

632 F. Supp. 1106, 1112 (N.D. Ill. 1986) (Moran, J.) (noting that "common law principles have long been used to fill gaps in or supplement the Interstate Commerce Act"). In administering federal common law, federal courts may "create[e] new principles of law" or "borrow[] existing principles of state law." *W. Sec. Co., a Subsidiary of Universal Mortg. Corp. v. Derwinski*, 937 F.2d 1276, 1280 (7th Cir. 1991).

Waiver is an affirmative defense that must be affirmatively pled. Fed. R. Civ. P. 8(c)(1); *Elliott v. Inter–Ins. Exch. of Chi. Motor Club*, 169 Ill. App. 3d 702, 706, 523 N.E.2d 1086, 1089 (1st Dist. 1988) (holding that Plaintiff could not raise estoppel argument because "[u]nder Illinois law, both estoppel and waiver must be affirmatively pleaded or they are waived"). Defendants can "bring a motion to dismiss on the basis of an affirmative defense only if that affirmative defense appears on the face of the complaint." *766347 Ontario Ltd. v. Zurich Cap. Markets, Inc.*, 249 F. Supp. 2d 974, 985 (N.D. Ill. 2003) (St. Eve, J.) (citing *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Additionally, a Plaintiff "need not anticipate or plead around affirmative defenses." *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp.2d 951, 956–57 (N.D. Ill. 2002) (Gottschall, J.).

As Defendant has not filed an affirmative pleading and has made its waiver argument only in its motion to dismiss, this Court looks only to the facts in the complaint to assess whether Defendant has met its burden in proving waiver. Defendant has not met this burden. In so deciding, this Court need not determine as a matter of law whether Plaintiff's customers may be its agents, nor what is precisely required to waive a right under the ICCTA. The complaint does not include sufficiently detailed facts to assess whether (1) Plaintiff's customers served as its agents, or (2) whether any action by Plaintiff or Plaintiff's customers constituted waiver of their right to collect car allowances. Again, Plaintiffs are not required to anticipate affirmative defenses in their pleadings; the burden of proof rests with the party asserting the defense. *Bauer v. J. B. Hunt*

4

*Transport, Inc.*, 150 F.3d 759, 763 (7th Cir. 1998). This court lacks "all the facts necessary to rule on the affirmative defense." *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.,* 877 F.3d 742, 745 (7th Cir. 2017). Thus, Plaintiff's complaint cannot be dismissed on account of purported waiver.

II. <u>Mileage Allowances</u>

Plaintiff alleges that Defendant failed to pay mileage allowances for its use of Plaintiff's "tank and covered hopper cars." (Dkt. 1, ¶ 18). Plaintiff contends it is entitled to compensation for Defendant's use of its railcars under the ICCTA. Specifically, it asserts that Defendant has failed to pay mileage allowances required under 49 U.S.C. § 11122, constituting a violation of the ICCTA and thus giving rise to a cause of action under § 11704.

The parties do not appear to dispute that a mileage allowance, and thus a potential cause of action, exists with respect to Plaintiff's use of Defendant's tank cars. Mileage allowance rates for carriers' use of private tank cars are set by the STB. *Investigation of Tank Car Allowance Sys.*, 3 I.C.C.2d 196 (I.C.C. Sept. 23, 1986) ("Ex Parte No. 328"); *see also* Freight Tariff RIC 6007-Series, Items 187 & 190 ("the Tariff"). The parties disagree over whether a similar mileage allowance obligation exists with respect to Plaintiff's use of Defendant's covered hopper cars. Two questions underlie this disagreement: first, whether the STB has established mileage allowances for covered hopper cars; and second, whether in the absence of specific ICC or STB provisions, ICCTA § 11122 itself provides an independent legal obligation for carriers to pay allowances for the use of covered hopper cars.

*A. Regulatory Covered Hopper Mileage Allowances*

Plaintiff does not plausibly allege that STB regulations establish mileage allowances for covered hopper cars. Ex Parte No. 328, in which the ICC (the STB predecessor) established a compensation formula for use of private tank cars, clearly relates only to the use of tank cars, not covered hopper cars. 3 I.C.C.2d at 196. And indeed, the ICC noted in a 1987 decision that "the

5

ICC has never found it necessary to prescribe a uniform system of compensation to be paid for privately owned covered hopper cars." *Lo Shippers Action Comm.*, 4 I.C.C.2d 1, 5 (I.C.C. Aug. 12, 1987). Plaintiff does not identify a subsequent ICC or STB order establishing a compensation system for covered hopper cars.

Plaintiff also alleges that the Tariff establishes mileage allowances for use of covered hopper cars, arguing: "the procedures for calculation, payment, and auditing of mileage allowances on privately owned or leased covered hopper cars are also published for the railroad industry in the Tariff." (Dkt. 1, ¶ 12.) But while Plaintiff lays out how, and through which specific provisions, the Tariff establishes mileage allowance rates for tank cars, *cf.* Dkt 1, ¶¶ 10-11, Plaintiff's allegation regarding the purported rates for covered hopper cars is vague. Indeed, Items 187 and 190, the only parts of the Tariff specifically referenced in the complaint, relate only to tank cars. (Dkt. 14-2). Furthermore, Plaintiff fails to explain how the Tariff, issued by an entity called "Railinc," represents an official STB policy the violation of which gives rise to a cause of action under 49 U.S.C. § 11704. 49 U.S.C. § 11704(b) ("A rail carrier providing transportation subject to the jurisdiction of the Board under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part."). Thus, Plaintiff has not plausibly alleged that the Tariff establishes a right to collect mileage allowances that is actionable under the ICCTA.

### B. *Statutory Covered Hopper Mileage Allowances*

Despite the incomplete allegations above, Plaintiff has a viable claim for mileage allowances for covered hopper cars directly under the statute. *See Rymes Heating Oils, Inc. v. Springfield Terminal R. Co.*, 358 F.3d 82, 89 (1st Cir. 2004) ("§ 11704(b) clearly provides a damages action for a direct statutory violation of the ICCTA itself."). Plaintiffs argue that, even without an applicable STB regulation, railroads must pay for use of private rail cars under § 11122. Defendants respond that § 11122 does not independently create such an obligation without further action from the STB.

6

The statute itself is somewhat ambiguous. Subsection A grants rulemaking authority to the STB related to the "compensation to be paid for the use of a locomotive, freight car, or other vehicle" and does not establish an independent obligation for carriers to pay for such use. 49 U.S.C. § 11122(a). A reading of subsection B is less clear. It is not immediately obvious from the face of the statute whether the "rate of compensation to be paid for each type of freight car" in the first sentence of the subsection binds railroads, or, like the second sentence and prior subsection, merely instructs the STB in its own regulatory activities. It reads, in relevant part:

> The rate of compensation to be paid for each type of freight car shall be determined by the expense of owning and maintaining that type of freight car, including a fair return on its cost giving consideration to current costs of capital, repairs, materials, parts, and labor. In determining the rate of compensation, the Board shall consider the transportation use of each type of freight car, the national level of ownership of each type of freight car, and other factors that affect the adequacy of the national freight car supply.

49 U.S.C. § 11122(b).

Case law from the ICC and D.C. Circuit, though, strongly suggests that § 11122, independent of any STB rule, binds railroads to pay fair rates for use of private cars. The ICC and the D.C. Circuit have held that the authority to set allowances contained in § 11122 is discretionary; that is, the STB may, but need not, establish such rates for "any type of car." *Lo Shippers Action Comm.*, 4 I.C.C.2d at 5, *aff'd LO Shippers Action Comm. v. I.C.C.*, 857 F.2d 802 (D.C. Cir. 1988). However, in so holding, the ICC noted that "[i]f actions of individual carriers are consistent with the statutory factors, we have no reason to displace those actions with a nationwide prescription." *Id.* at 11. Plaintiff correctly points out that this language implies that, even without rate-setting by the STB, railroads must compensate owners of private rail cars in accordance with the factors in § 11122(b). The ICC in *Lo Shippers* held that nation-wide rate setting for covered hopper cars was unnecessary because "the assailed levels of car compensation on private covered hopper cars have not been shown to be unlawful." *Id.* at 13–14. Defendant points to additional language in *Lo*

7

*Shippers* to support its contention that no allowances are required for covered hoppers. Specifically, the ICC noted that: "[w]here a carrier publishes a rate specifically applicable only to movements in private cars, the carrier is not obligated to provide a car and has no obligation to publish an allowance." *Id* at 17. But the quoted language suggests the opposite: that absent a special published rate for private cars, carriers do have an obligation to publish and pay mileage allowances. And indeed, the ICC went on to conclude, after it declined to set nation-wide rates for covered hopper cars, that "Commission scrutiny of individual railroad allowances under all the factors set forth in §11122 is still available." *Id.* at 19.

Thus, it is evident that the ICCTA gives rise to an obligation to compensate private freight car owners. Still, absent a relevant STB order or regulation, it is unclear what allowance rates for covered hopper cars would be permissible under § 11122(b). This Court may ultimately be ill-equipped to answer that question. Regardless, § 11122 does establish some duty for railroads to compensate the entities that provide them with private freight cars. According to the facts alleged in the complaint, Defendant provided no compensation whatsoever to Plaintiff for the use of its cars after April 2020. The murky details of the exact relationship between Plaintiff and Defendant also, alone, cannot defeat Plaintiff's claim for allowances for covered hopper cars at this stage. Defendant suggests that Plaintiff must directly pay Defendant for transportation services to be entitled to allowances. (Dkt. 14, at 3.) But the statutory regime clearly contemplates that the requirement to compensate arises not from payment for transportation services, but from use of another party's private freight rail cars. 49 U.S.C. § 11122; *General American Transp. Corp. v. ICC*, 872 F.2d at 1050.

While it is not yet clear what level of compensation would be permissible under the ICCTA, it is clear that providing no compensation would give rise to a violation of the statute. Plaintiff has a viable cause of action relating to mileage allowances for the use of its covered hopper cars. Should

8

this Court need to assess whether a particular rate meets the statutory factors laid out in §11122, it may exercise its power under the primary jurisdiction doctrine to refer aspects of this case to the STB for guidance. *See, e.g., Engelhard Corp. v. Springfield Terminal Ry. Co.*, 193 F. Supp. 2d 385, 391–92 (D. Mass. 2002).

**Conclusion**

Based on the foregoing, the Court denies Defendants' motion to dismiss [11].

IT IS SO ORDERED.

Date: 12/8/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge