**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| THIELE KAOLIN COMPANY, | ) | |
| | ) | Case No. 22-cv-00728 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| WISCONSIN CENTRAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thiele Kaolin Company ("Thiele") brings this action against Wisconsin Central Ltd. ("WCL") under the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq.* Thiele claims that WCL failed to compensate Thiele for its use of Thiele's private freight cars, in violation of the ICCTA.

Before the Court are WCL's motion for partial summary judgment [165] and Thiele's motion for summary judgment [171]. For the following reasons, the Court denies WCL's motion for partial summary judgment, and grants in part and denies in part Thiele's motion for summary judgment.

I.      **Background**

a.    *Statutory Framework*

Underlying this dispute is a complex regulatory framework involving the use of private freight rail cars. Under the ICCTA, rail carriers have common carrier obligations, including furnishing "transportation or service on reasonable request." 49 U.S.C. § 11121(a). The obligation to provide such service includes "(A) the … supply … of locomotives, cars, other vehicles, and special types of equipment used in the transportation of property by a rail carrier, and (B) the supply of trains by a rail carrier." *Id.* § 10102(2). The Surface Transportation Board, which regulates interstate railroads, recently affirmed that railroads have a common carrier obligation to provide tank cars. *N. Am. Freight*

1

*Car Association; Am. Fuel & Petrochemicals Manufacturers; the Chlorine Institute; the Fertilizer Institute; Am. Chemistry Council; Ethanol Prods., LLC d/b/a Poet Ethanol Products; Poet Nutrition, Inc.; & Cargill Inc.*, 2025 WL 221211, at *2 n. 5 (STB Jan. 14, 2025) ("*Union Pacific*").

It is often more economic for shippers, rather than railroads, to provide specialized rail cars for their commodities. *In Re Private Cars*, 50 I.C.C. 652, 657 (1918). By leasing rail cars from rail car suppliers or from shippers themselves, railroads can fulfill their common carrier obligation to make suitable freight cars available. *General American Transp. Corp. v. ICC*, 872 F.2d 1048, 1050 (D.C. Cir. 1989). If a rail carrier uses private freight cars, it must provide compensation, often through direct payments known as "mileage allowances." 49 U.S.C. § 11122. The mileage allowances must reflect the cost of owning and maintaining the freight car, including a fair return on its cost. *Id.* § 11122(b).

Rules for mileage allowances are established by Railinc, a subsidiary of the Association of American Railroads, which serves as a clearinghouse for the payments. Railinc published Freight Tariff RIC 6007 (the "Tariff"), which provides for mileage allowances based on the miles traveled by a given car in transporting a shipment. The Tariff permits the payment of mileage allowance to both car owners and lessees. *Union Pacific,* 2025 WL 221211 at *3 n.7.

  b.  *Undisputed Facts*

The Court refers to the parties' Local Rule 56.1 statements of material facts and the record evidence. The facts below are deemed admitted.

Thiele mines and processes a clay-like commodity known as "kaolin." It supplies kaolin products from its facilities in Georgia to customers in Wisconsin. For years, Thiele has made capital investments in the acquisition, by purchase or long-term lease, of rail tank cars suitable for the transportation by rail of kaolin in a water-based "slurry" form.

WCL is a railroad whose ultimate parent company is Canadian National Railway Company ("CN"), a publicly traded Canadian company. WCL receives Thiele's rail cars in Chicago to deliver

its kaolin products to Wisconsin. The kaolin product is transported on WCL lines to Thiele's customers, which include ND Paper and Pixelle. Thiele does not pay freight costs for the transport of its kaolin products; rather, Thiele's customers pay transportation costs to WCL.

In 2019, CN decided to alter the rates charged to its customers. In April 2020, WCL and ND Paper entered into a contract regarding the transportation of tank cars, which stated that the contract is "exclusive of mileage compensation." In September 2021, WCL and Pixelle entered into another contract establishing a discounted mileage rate based on "shipper supplied" tank cars. Neither of WCL's contracts makes reference to the Tariff with regards to mileage allowances.

WCL paid mileage allowances to Thiele under the Tariff prior to entering into contracts with ND Paper and Pixelle. However, when upon entering its contract with ND Paper in April 2020, WCL stopped paying any mileage allowances to Thiele for use of its freight cars (despite its contracts applying only to tank cars). Thiele brought this lawsuit in 2022 asserting that it is entitled to a declaration stating that WCL is required to pay mileage allowances to Thiele pursuant to the Tariff, as well as reimbursement for WCL's use of its freight cars in the form of mileage allowances at the rate established by the Tariff (the full-mileage rate).

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and … draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). In the context

of cross-motions for summary judgment, courts "construe all inferences in favor of the party against whom the motion … is made." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998). After a party makes a motion for summary judgment, the adverse party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

## III.    Discussion

Both parties have moved for summary judgment. WCL's motion is only with respect to claims relating to the use of Thiele's tank cars, while Thiele's motion pertains to its entire case.

As a threshold matter, neither party disputes the following facts: WCL is a "rail carrier" subject to the "common carrier" requirements of the ICCTA. (Dkt. 196) ¶ 5; 49 U.S.C. § 10102(5). Thiele transports its products on WCL's lines between Chicago and Wisconsin in rail cars that Thiele owns or leases. (Dkt. 192) ¶ 8. Thiele's cars moved on WCL rail routes between Thiele's location in Georgia to Wisconsin. (Dkt. 192) ¶ 20. These facts together are sufficient to find that by using Thiele's own rail cars, WCL fulfilled its common carrier obligations with respect to transporting Thiele's products. The parties dispute only whether WCL's contracts exempt it from paying mileage allowances to Thiele as a matter of law.

### a.    *WCL's Motion for Partial Summary Judgment*

WCL claims that it is entitled to partial summary judgment as to Thiele's claims related to its tank cars because "during the period addressed in the complaint, [WCL] provided transportation using the tank cars under transportation contracts." (Dkt. 169) at *2. Because WCL entered contracts with Thiele's customers for transportation of Thiele's products, WCL claims "that neither §§ 11101, 11121, and 11122, nor their case law progeny, nor [the Tariff], apply as a matter of law." (Dkt. 169) at *8.

If the Court finds that those provisions do apply, WCL argues in the alternative that it is entitled to summary judgment because Thiele "neglected to request a 'full-mileage' rate," which it claims is a requirement to receive mileage allowances. (Dkt. 169) at *2. Finally, WCL argues that

Thiele does not have enough evidence to rebut the "presumption" that the discounted rate that WCL gave to Thiele's customers satisfied its statutory obligations.

        i.    Applicability of the ICCTA

The ICCTA provides that any party to a contract entered into under § 10709(b) "shall have no duty in connection with services provided under such contract other than those duties specified by the terms of the contract." 49 U.S.C. § 10709(b). The Surface Transportation Board remarked that the "natural reading" of this provision is that "common carrier duties do not apply to transportation provided under contract, even where those duties are not specifically addressed by the contract." *Ameropan Oil Corporation v. Canadian National Railway Company*, 2019 WL 1723082 at *3 (STB 2019). However, the provision also states that rail carriers remains subject to common carrier obligations set forth in § 11101 with respect to "rail transportation not provided under such a contract. *Id.* § 10709(f). WCL contracted with Thiele's customers regarding rail transportation. Accordingly, WCL is exempt from its common carrier duties with respect to *those* parties.

Prior to entering contracts with WCL, although Thiele provided rail cars for WCL, Thiele's customers paid WCL for rail transportation. *Id.* ¶¶ 29, 39. WCL emphasizes that it was "Thiele's choice" to make it the customer's responsibility to pay for the use of rail cars in transportation. *See* (Dkt. 169) at *3; (Dkt. 192) ¶ 7; (Dkt. 196) ¶ 13. Whatever the rationale Thiele had for its business choices and its negotiations with its customers, that does not impact WCL's obligation to pay mileage allowances to Thiele. WCL cannot bind Thiele to the terms of contracts to which Thiele is not a "party." It is undisputed that prior to altering its contract terms with ND Paper and Pixelle, WCL paid mileage allowances for transportation of Thiele's kaolin products under the Tariff notwithstanding its arrangement with Thiele's customers. *See* (Dkt. 192) ¶¶ 10–11, 14–15. There is no evidence that establishes Thiele was "a party to a contract" with respect to "rail transportation" provided to WCL, such that Thiele WCL can circumvent its common carrier obligation to

compensate Thiele for use of its rail cars. Without that evidence, a jury could not reasonably find that preexisting relationship between Thiele and WCL was modified by any contract.

WCL does not move for summary judgment on Thiele's claims with respect to its hopper cars, since its contracts with Thiele's customers apply only to Thiele's tank cars. However, the evidence is insufficient to find its contracts apply to *any* of Thiele's rail cars. Therefore, the Tariff applies, and WCL's contracts do not exempt it from its common carrier obligations to Thiele to pay mileage allowances.

> ii.    Failure to Request a Full-Mileage Rate

Next, WCL claims that it is entitled to summary judgment because Thiele did not request a full-mileage rate from WCL pursuant to the Tariff. It claims that "Thiele had the opportunity to request transportation rates on its own behalf, including full-mileage transportation rates that provide for a mileage allowance, rather than leaving the transportation to its customers," but that Thiele elected not to do so. (Dkt. 169) at *10. WCL argues that Thiele's decision not to ask for a full-mileage rate precludes it from bringing an action to recover the allowances now.

This argument is unavailing. Even if there were a genuine dispute of facts here, any dispute about Thiele's "business decision" would not be material. Its "business decisions" do not change the fact that WCL must satisfy its common carrier obligations. As for other vehicles for relief, § 11101(b) does not provide Thiele "the opportunity to request transportation rates on its own behalf" as WCL claims. (Dkt. 200) at *12. It simply provides that WCL "shall … provide to any person, on request, the carrier's rates and other service terms." The statute relates "carrier's rates" to "service terms" through the word "other," indicating that the carrier's rates are one of many service terms. The natural reading of the statute is that any person may request a carrier's terms of service, including its rates.

WCL cites *Union Pacific* to support its argument that Thiele should have "asked" for full-mileage rates, but that case is distinguishable. In that case the car owner was the purchaser of rail services, unlike here, where there is no dispute that Thiele does not purchase transportation services from WCL. (Dkt. 192) ¶ 7. Furthermore, the Surface Transportation Board decision recognizes that it "do[es] not require" a specific avenue for relief. *Union Pacific*, 2025 WL 221211 at *16. While Thiele did not ask WCL for full-mileage rates, it does not preclude Thiele from seeking its compensation now.

iii.     Adequacy of Compensation

WCL's final theory is that, because it can show that it offered Thiele's customers a discounted rate, it can show that it effectively compensated Thiele's customers for supplying Thiele's rail cars and "presumptively satisfied any obligation" to pay mileage allowances. (Dkt. 200) at *14. This arrangement resulted in Thiele receiving no mileage allowances. Nevertheless, WCL claims that the statute "imposes no duty on Wisconsin Central to police the arrangements between Thiele and its customers," because that would "impose an affirmative obligation on Wisconsin Central to offer a 'full-mileage' rate absent any request for that rate." (Dkt. 15) at *15. There is again no genuine dispute of material fact here. Notwithstanding evidence of the deal Thiele contracted with its customers, there is no evidence that a reasonable jury could conclude WCL's arrangement compensated the owner or lessor of the rail cars as required by law. Because WCL has not shown a genuine dispute of material fact, the Court denies its motion.

b.  *Thiele's Motion for Summary Judgment*

To prevail on its claim under the ICCTA, Thiele must show that there is no genuine dispute that WCL used its freight cars to transport Thiele's products yet failed to pay mileage allowances for use of Thiele's cars, as required by law. The facts that WCL used Thiele's cars and did not pay mileage allowances are not in dispute. WCL does not point to evidence that there is a genuine dispute of

7

material fact precluding summary judgment on its liability.  Having found that the ICCTA applies to WCL with respect to its use of Thiele's cars, the undisputed facts establish that Thiele is entitled to summary judgment as to WCL's liability.

As for damages, Thiele asserts that the total unpaid mileage allowance is $1,748,081.03.  (Dkt. 173) ¶ 41.  The calculation is derived from monthly reports showing Thiele's claim amounts based on mileage, created by a third-party vendor, AllTransek, which Thiele hired for management services, including monitoring and billing for mileage allowances.  *See* (Dkt. 173-2).  AllTranstek created a final summation report (the "Summation Report") purporting to be "an all-inclusive list of railcar movements with corresponding mileage calculations for Thiele's claim," which serves as the basis for Thiele's damages calculation.

WCL opposes Thiele's motion for summary judgment on the basis that the monthly AllTranstek reports are inadmissible as "textbook hearsay" and "cannot be reconciled" with other evidence, including the Summation Report. (Dkt 195) at *1.  WCL further claims that the AllTranstek reports have not been authenticated, which "creates fact and credibility questions" combined with the lack of corroboration.  (Dkt. 195) at *1, 10.

Thiele responds that the Summation Report is admissible under Federal Rule of Evidence 803(6) as a record of regularly conducted business activity.  (Dkt. 202) at *1.  Third-party records may qualify as business records if an "entity integrated the third-party record into its records and relied upon it in its day-to-day operations," but the proponent must also satisfy the other requirements of Rule 803(6).  *See BP Amoco Chem. Co. v. Flint Hills Res.*, LLC, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010) (St. Eve, J.).

Under Rule 803(6), records are exempted from the rule against hearsay if (1) the record was made at or near the time by, or from information transmitted by, a person with knowledge; (2) the record was kept in the course of a regularly conducted activity of a business; (3) making the record

8

was the regular practice of that activity; (4) all these conditions are shown by the testimony of the custodian or other qualified witness; and (5) if the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6). "A qualified witness does not need to be the person who prepared the records or have personal knowledge of the information contained, but the witness must have knowledge of the procedure by which the records were created." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998).

Thiele asserts without explanation that the AllTranstek reports "meet each of the requirements" of Rule 803(6). (Dkt. 202) at *2. Yet Thiele does not identify any individual with knowledge of the procedure by which the records were created.[1] Jennifer Smith, Thiele's accounting manager, testified that the "extent of [her] involvement with AllTranstek" was that Thiele sent "a report of movements" every month to AllTranstek, which would then "send [her] … a report of the mileage claims." (Dkt. 193-23) 7:10–15. She stated she does not check the monthly reports for accuracy. *Id.* 12:13–15. Thiele cites no evidence that any other witness had insight into AllTranstek's process for generating the reports, nor is there evidence of whether or how the data Thiele sent to AllTranstek was verified. While Thiel might have relied on the AllTranstek reports to ascertain "what credits have been paid or otherwise claimed," (Dkt. 196-23) at 12:22–13:5, Thiele did not establish that the reports are admissible under hearsay rules.

As for Thiele's argument that the Summation Report is admissible under Rule 1006 as a summary, the Court notes that Thiele incorrectly quotes the rule by omitting a key word: summaries may be admitted "to prove the content of voluminous <u>admissible</u> writings …" Fed. R. Evid. 1006

---

[1] Thiele claims that it "certainly can have a custodian of records authenticate the AllTranstek Reports as received and relied upon by Thiele …." (Dkt. 202) at *3. Why it did not already do so is unclear, but the Court may not consider this promise as evidence for the purpose of summary judgment.

(emphasis added). The monthly reports have not met the requirements of the business records hearsay exception, and Thiele cannot back-door inadmissible hearsay by simply offering a summary of it.

Finally, WCL argues that Thiele cannot prevail on its summary judgment motion because it failed to rebut WCL's affirmative defenses with evidence. (Dkt. 195) at *13. It is on the non-moving party to meet its burden of proof and show specific facts supporting its affirmative defenses. *See Wilson v. Sundstrand Corp.*, 2003 WL 21961359, at *4 (N.D. Ill. Aug. 19, 2003) (Kennelly, J.). WCL has not offered any such facts here, and WCL invites the Court to err by shifting the burden to Thiele to provide evidence for WCL's affirmative defenses.

Absent any additional evidence showing the quantum of damages, Thiele has not presented sufficient admissible evidence showing no genuine dispute of material fact as to that part of its claim. While the Court grants summary judgment as to liability, it must deny it as to damages.

## IV. Conclusion

For these reasons, the Court denies WCL's motion for partial summary judgment [165], grants Thiele's motion for summary judgment with respect to WCL's liability, and denies Thiele's motion with respect to the amount of damages [171].

**IT IS SO ORDERED.**

Date: 3/31/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

10