**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Thiele Kaolin Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-00728 |
| | ) | |
| Wisconsin Central Ltd., | ) | The Honorable Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | Magistrate Judge Daniel P. McLaughlin |
| | ) | |

**WISCONSIN CENTRAL LTD.'S MOTION**
**FOR JUDGEMENT PURSUANT TO FED. R. CIV. P. 52(C)**

Defendant, Wisconsin Central Ltd. ("WCL"), by counsel, hereby moves pursuant to Fed. R. Civ. P. 52(c) for judgment in its favor and against Plaintiff, Theile Kaolin Company ("Thiele") on the issue of damages. Thiele has failed to establish that it is entitled to damages from WCL in this case.

**PRELIMINARY STATEMENT**

As an initial matter, WCL maintains that it is not liable to Thiele for the reasons set forth in the pleadings and supporting documentation for its Motion to Dismiss pursuant to Fed. R. Civ. P. 12b(6) filed on April 18, 2022 (Dkt. 11); its Motion to Dismiss pursuant to Fed. R. Civ. P. 17 filed on December 20, 2023 (Dkt. 53); its Rule 56 Motion for Partial Summary Judgment filed on January 31, 2025 (Dkt. 165) and its Opposition to Theile's Motion for Summary Judgment filed on March 17, 2025 (Dtk. 193). To the extent necessary to preserve all appellate issues, WCL renews all supporting bases and arguments made in support of these motions in their entirety as if fully set forth herein.

With respect to damages, Thiele's claim fails for three reasons. First, Thiele's myriad and ongoing discovery violations should foreclose its ability to rely on the testimony of Annie Freeman and any untimely produced damages computation. Second, Thiele cannot establish that is in fact entitled to direct monetary compensation here where mileage allowances are paid to the owner or lessor of the rail cars and not to the shipper (Thiele). Third, the documentation put forward by Thiele, whether improper or not, simply does not establish or support an award of damages for a reasonably discernable amount here.

**ARGUMENT**

Under Rule 52(c), when a party has been fully heard on an issue in a non-jury trial and the court finds against the party on that issue, the court can enter a judgment at that time or wait until close of all of the evidence to do so:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c). Thus, a court presiding over a bench trial may "enter judgment [pursuant to rule 52(c)) against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue" if "a party has been fully heard on [that] issue." Fed. R. Civ. P. 52(c). Where, as here, judgment should be granted to the defendant in a bench trial where "upon the facts and the law the plaintiff ha[s] not shown any right to relief." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). A defendant's Rule 52(c) motion may be granted when "the plaintiff has failed to make out a prima facie case or where the plaintiff has made out a prima facie case but the court determines that a preponderance

of the evidence goes against the plaintiff's claim." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F.Supp.2d 383, 433 (S.D.N.Y. 2004) (internal quotation marks omitted).

In deciding a particular issue, the court has the prerogative "to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *International Union of Operating Engineers, Local Union 103 v. Indiana Const. Corp.,* 13 F.3d 253, 257 (7th Cir.1994) (quoting *Von Zuckerstein v. Argonne Nat'l Lab.,* 984 F.2d 1467, 1475 (7th Cir.), *cert. denied,* 510 U.S. 959, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993)); *see also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 2573.1. The court may even assess the credibility of witnesses. Wright & Miller, *Federal Practice and Procedure,* Civil 2d § 2573.1 pocket part (citing *Winning Ways, Inc. v. Holloway Sportswear, Inc.,* 913 F.Supp. 1454 (D.Kan.1996)). Where a Rule 52(c) motion is granted at the close of the plaintiff's evidence as requested here, "the court then must give judgment on the merits for the movant and make findings of fact as provided by Rule 52(a)." Wright & Miller, *Federal Practice and Procedure,* Civil 2d § 2573.1.

A motion for judgment on partial findings under Rule 52(c) differs from a motion for a directed verdict in a jury trial in that the Court does not draw all factual inferences in favor of the non-moving party. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 555, 110 S.Ct. 1331, 1338, 108 L.Ed.2d 504 (1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). To the contrary, a motion for judgment on partial findings allows the court "to determine the facts and the law and render judgment against the plaintiff or ... decline to render any judgment until the close of all the evidence." *Id.* Moreover, even where (as in this case) summary judgment has been denied before trial because of a material dispute of fact, a motion for judgment on partial findings can still be granted after a plaintiff has put in its case.

*LeBeau v. Libbey–Owens–Ford Co.,* 799 F.2d 1152, 1168 (7th Cir.1986) (Eschbach, J. dissenting) (collecting cases), *opinion modified and rehearing denied,* 808 F.2d 1272 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

Here, Theile has been heard on the issue of the damages it would have the Court impose on WCL based almost entirely on the testimony of a witness, Annie Freeman ("Freeman"), who was never properly disclosed using a damages computation that was only produced after the close of discovery based on documentation similarly produced after the close of discovery and after the summary judgment pleadings had been filed by both parties. As noted, numerous times, the Freeman affidavit and the documentation Theile relies on were stricken from the summary judgment proceedings and have thus never been properly disclosed in this case.

It can't be stressed enough that Thiele has failed to justify its failure to comply with the disclosure and discovery rules or cure the defects in its putative damages claim as set forth in WCL's Motion in Limine on Damages (Dkt. 253). WCL hereby renews the arguments raised in *limine* and requests that the Court completely disregard the testimony of Annie Freeman ("Freeman") who was never properly disclosed and the AllTranstek documentation produced after the close of discovery as the only fair result arising from Theile's gamesmanship and intentional disregard of the rules governing discovery. In lieu of re-stating the arguments raised in *limine*, WCL incorporates those arguments as if full set-forth in this motion and will instead simply supplement those arguments in this pleading while providing the Court with further argument regarding the deficiencies in Thiele's damages calculation.

What is particularly egregious about Theile's conduct is that Thiele never sought leave to amend or supplement its disclosures or discovery responses and thus never properly disclosed its computation of damages, Freeman as a witness, or the documentation that it relies on here. The

Court has never been provided with any meaningful explanation as to why Thiele failed to comply with the rules. Given that failure, the only inference to be drawn is that Thiele's conduct was intentional to game the system in its favor.

Without the unearned benefit of the aforementioned undisclosed computation, witness and untimely documents, Thiele presented no actual evidence to support their claim for mileage allowances at trial. The remaining witnesses that Thiele presented, Scott Ahrens and Jennifer Smith, merely testified to basic background facts. Ahrens' testimony consisted of the fact that Thiele leases all of the railcars at issue, that mileage allowances are calculated pursuant to the 6007 tariff; and that Thiele relies solely on all Alltranstek to calculate mileage allowances based on information from Railinc. Smith testified that she received the monthly statement from Freeman regarding Alltranstek's tabulation of open claims but did nothing verify their accuracy

Regardless, even though some of the damages claimed by Thiele allegedly came arose in 2025 and 2026, there can be no doubt that Theile was fully capable of providing a damages calculation from the start of this dispute. Thiele possessed all of the data necessary to provide a preliminary computation of the damages it was seeking here from AllTranstek within a few short months of the cessation in the payment of mileage allowances. Thiele possessed the leasing documents for all of its railcars, the number of railcars it was leasing and their car marks. According to the witnesses at trial, Thiele provided the list of its leased railcars to AllTranstek. Within three months of the cessation in payments in 2020, Theile began receiving monthly reports from AllTranstek that included AllTranstek's computation of the loaded miles traveled by each of the railcars allegedly leased by Thiele and the mileage allowance rate. However, instead of producing a computation, Thiele actually asserted in its Rule 26 disclosure that "the damages Thiele Kaolin claims are the amounts, if any, awarded in favor of Thiele Kaolin under the

complaint filed herein, and thus cannot be calculated at this time" which was patently untrue. During the summary judgment proceedings, Thiele produced Exhibit N, which became Exhibit 1 at trial, compiling the amounts it was seeking for the the time period of 2020-2024. Thus, a preliminary damages computation clearly could have been produced during discovery. Thiele chose not to do that.

The prejudice to WCL is acute as it was left with no way to meaningfully challenge Freeman's testimony regarding the AllTranstek computation. According to Freeman, AllTranstek used a list of rail cars provided by Thiele to identify the cars that AllTranstek should use in its computation. During trial, Freeman testified that she did nothing to verify that list and there was no evidence from any other witness or source that the cars were ever verified. The rail car data is the very foundation of Thiele's damages claim. Yet, at trial, Thiele presented no evidence to verify that the cars on that list were actually cars that it leased or were carrying its products. All we have is a list of cars provided by some unidentified Thiele employee that Thiele represented as a correct list but there was no evidence presented of the actual leases identifying the cars in question or otherwise verifying the car marks were for cars shipping Thiele's products. In fact, Thiele presented no evidence that anyone ever checked the accuracy of the monthly reports prepared by AllTranstek.

In denying summary judgment on Thiele's damages, the Court specifically noted the problem of verification inherent to the computation (now Exhibit 1) presented in support thereof:

> Jennifer Smith, Thiele's accounting manager, testified that the "extent of [her] involvement with AllTranstek" was that Thiele sent "a report of movements" every month to AllTranstek, which would then "send [her] ... a report of the mileage claims." (Dkt. 193-23) 7:10–15. *She stated she does not check the monthly reports for accuracy*. *Id*. 12:13–15. Thiele cites no evidence that any other witness had insight into AllTranstek's process for generating the reports, *nor is there evidence of whether or how the data Thiele sent to AllTranstek was verified*.

*Thiele Kaolin Co. v. Wisconsin Cent. Ltd,* No. 22-CV-00728, 2026 WL 885059, at *5 (N.D. Ill. Mar. 31, 2026) (emphasis added). Thiele never made any attempt to fix this fundamental problem with its damages. Instead, Thiele presented additional computations for 2025 and 2026 based on the same unverified reports and data as the untimely evidence presented in support of its summary judgment motion.

If Thiele had complied with the disclosure and discovery rules and moved to amend or supplement, WCL would have at least had the chance to delve into this issue with targeted discovery. Thiele's improper litigation tactics unfairly deprived WCL of that opportunity. Thiele should not be allowed to benefit from its conscious and repeated decisions to completely disregard the rules.

Regardless, Thiele also cannot establish that it is entitled to the monetary damages that it seeks because it never received direct monetary compensation for mileage allowances from WCL. That's not how the system works. Thiele's witnesses were clear, mileage allowances are paid to the car owners or lessors who then provided credits to Thiele. At most, Thiele would be entitled to credits from the owner or lessors of the railcars that it leased from them and then used to ship its product based on the particular contract or arrangement Thiele had with each particular owner or lessor. Yet, when WCL attempted to question witnesses about how the credits were applied, the Court upheld Thiele's objection and thus barred WCL from presenting evidence that the milage allowances were capped pursuant to at least some of the leases Thiele entered into for rail cars. Without this documentation, there is no way to verify the exact amount of credit that Thiele would have been entitled to from the lessors. Thiele never presented this evidence at trial and WCL was barred from eliciting testimony on this issue.

In essence, Thiele is asking this Court to circumvent the actual process and provide it with a windfall that is outside the dedicated accounting system for the payment of mileage allowances without taking into account that the ensuing credits applied to entities like Thiele might not equate to the mileage allowances paid to the lessors/owners on a dollar-for-dollar basis. An award of monetary damages to Thiele would potentially leave WCL open to claims from the owners and lessors of the cars for the amounts paid to Thiele who would then be entitled to claim credits from those owners and lessors according to rules of the system. That result is untenable as it would result in a potential windfall for Thiele and necessitate additional costly litigation to rectify. Under the evidence presented here, Thiele simply cannot establish that it is reasonably entitled to monetary compensation from WCL.

## CONCLUSION

For the foregoing reasons, WCL respectfully requests that the Court enter an order denying Thiele's claim for damages outright as baseless or alternatively awarding Thiele nominal damages.

Date: November 4, 2026

Respectfully Submitted,

WISCONSIN CENTRAL LTD.

By:/s/Michael J. Barron, Jr.

Attorney for Wisconsin Central Ltd.
Michael J. Barron, Jr.
Fletcher & Sippel LLC
29 North Wacker Drive
Suite 800
Chicago, IL 60606-3208
(312) 252-1500
mbarron@fletcher-sippel.com